**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LARRY ARNOLD MCGHEE, JR.,

       Petitioner,

                                     CASE NO. 10-CV-10737

v.                                        HONORABLE STEPHEN J. MURPHY, III

BARRY DAVIS, Warden,

       Respondent.

_____/

**OPINION AND ORDER ADOPTING REPORT & RECOMMENDATION,**
**DISMISSING PETITION FOR WRIT OF HABEAS CORPUS** (docket no. 7),
**AND DENYING A CERTIFICATE OF APPEALABILITY**

In 1998, police raided a rental property owned by McGhee and found drugs on the premises. McGhee was not present at the time of the raid. Police arrested him in Georgia, more than two years later, and charged him with possession of the drugs found in the house. Specifically, he was tried and convicted for possession with intent to deliver 650 grams or more of cocaine, less than 50 grams of heroin, and less than 5 grams of marijuana. He received three months for the marijuana conviction, and consecutive terms of twelve months to twenty years for the heroin conviction and twenty to thirty years for the cocaine conviction.

After exhausting his direct appeals, McGhee filed a petition for habeas corpus with this Court. His petition was assigned to a magistrate judge for issuance of a Report & Recommendation ("Report"). *See* Order Referring Pretrial Matters, ECF No. 13. On April 17, 2012, the magistrate judge issued a Report, recommending that the Court deny

1

McGhee's habeas petition. *See* Report, ECF No. 16. McGhee timely filed specific written objections to the magistrate judge's findings, which this Court now reviews de novo. *See* Objections, ECF No. 17;  *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

## BACKGROUND

The following statement of facts is taken from the magistrate judge's Report.

A.  Petitioner's 1998 Trial

1.  The September 1998 Search of Petitioner's Property

In 1997, Petitioner became the co-owner of a house at 483 Montana Street in Pontiac, Michigan.  (Trial Transcript Volume ("Tr.") III at 203.)  On September 14, 1998, members from the Oakland County Narcotics Enforcement Team executed a search warrant on that property. (Tr. II at 91.) When the authorities entered the house, no one was there.  (Tr. II at 91.)  In the kitchen, however, the team found a digital scale with residue of a substance later identified as cocaine.  (Tr. II at 92.)  In a "well disguised" compartment in the bathroom, they found two "baggies" collectively containing two pounds of marijuana.  (Tr. II at 111, 113.)  In the same compartment was an empty "Highpoint Arms" gun box.  (Tr. II at 111-12.) Sitting in the middle of the bathroom floor, authorities found a green, wooden box containing 375 grams of cocaine, a knee brace, and, at the bottom, a 1991 fishing license issued to Petitioner.  (Tr. II at 155-58; see also Tr. II 120.)  In the hall closet, the team found a green "suit coat"-type jacket with approximately 28 grams of cocaine and under 50 grams of heroin.  (Tr. II at 161, 175-176.)  Also in the closet was what a team member believed to be a drug ledger or tally sheet.  (Tr. II at 106.)

In a detached garage, the team found a locked, 1981 GrandPrix.  (Tr. II at 159-161; Tr. III at 43-48.)  The Grand Prix's trunk was "punched," suggesting that someone had, at some unknown time, broken into the trunk of the car. (Tr. III at 49-50.)  The car's Vehicle Identification Number had been tampered with and the standard bench-style backseat had been replaced with a pair of bucket seats and console. (Tr. III at 44, 45-46, 48.)  In that rear console, were two 125 gram packages of cocaine.  (Tr. II at 159-160; Tr. III at 44, 45-46, 48.)  Documents recovered in the garage and car indicated that Petitioner

purchased the vehicle in 1989 and had maintained insurance and registration for the vehicle through mid-to-late 1996. (Tr. II at 169, 194.)

Documents addressed or belonging to Petitioner were found in various places in Petitioner's house. Most of the documents were old relative to the 1998 search. For example, inside the Grand Prix was Petitioner's 1989 application for a driver's license. (Tr. II at 163-64.) Similarly, authorities recovered a 1992 name tag for "Larry Crunch McGhee." (Tr. II at 168.)

However, the raid team also found some relatively recent documents. In the garage, they recovered an October 1997 document from a towing company which included Petitioner's name and referenced the Grand Prix. (Tr. II at 168.) In the hall closet, the team found a utility bill in Petitioner's name with a billing period of August 4 to September 2, 1998, and a due date of September 24, 1998. (Tr. II at 96-98.) On the kitchen table, authorities recovered a "form from the Michigan Department of Consumer and Industry Service Corporation, Securities and Land Development Bureau." (Tr. II at 181.) As one of the raid team members explained to the jury:

> And on top of that form is a note. It looks like . . . [Mr. McGhee] [was] trying to form a business. This [form?] is dated [August 17,1998.]
>
> And there's a note on this . . . yellow pad – the date of 9-10, 6:00 p.m. It said, "Crunch, you can have a copy of the form, since I had to come to the west side for another appointment. It ain't my fault. Good luck. Sincerely" – and I can only – it looks like maybe "Nichols" or "Eckles."

(Tr. II at 181.)

Although Petitioner owned the 483 Montana property, for about a year prior to the raid, Petitioner had rented the property to one Michael Butler. Butler testified that Petitioner had left "[c]lothes, documents, [and] some miscellaneous paperwork" in the garage and hallway closet. (Tr. II at 217, 224.) Petitioner's Grand Prix was also in the garage while Butler rented the property. (Tr. II at 215.) Butler said he did not have access or keys to the car and that "as far as [he knew]" it was locked. (Tr. II at 215.) Butler noted that "personal correspondence" for the Petitioner would occasionally come to the property while he was a tenant. (Tr. II at 223.)

\*\*\*

Butler testified that he had utilities in his name while he lived at Petitioner's house but, when he moved out, he did not shut off the utilities and did not know who did. (Tr. II at 212.).

3

Marilyn Bender, whose home neighbored 483 Montana, testified that Butler moved out about a month prior to the September 1998 raid. (Tr. II at 239.) After Butler moved out, she saw cars at the house but never met the person living or using the house. (Tr. II at 240, 242.) At trial, she stated that she had never seen Petitioner before and never saw him going to the house after Butler moved out. (Tr. II at 242.)  She conceded, however, that she had no idea who used the home after Butler. (Tr. II at 242.)

More than two years after the 1998 raid, Petitioner was apprehended. (Tr. III at 160.) In January 2001, FBI agents found Petitioner in Georgia, and, after Petitioner did not answer the door, used an entry tool to gain access to the apartment. (Tr. III at 160-61.)  Petitioner then showed the agents a Georgia driver's license containing his picture and a false name: Adante Kraft. (Tr. III at 162, 164.) According to one of the FBI agents, Petitioner responded that the drug possession charges were hearsay. (Tr. III at 162.) The agents found a .45-caliber handgun in the glove box of Petitioner's car. (Tr. III at 177.)

     2.  The 1992 Raid of 483 Montana

Six years before the events at issue in this case, 483 Montana was subjected to another raid. Three former Pontiac police officers involved in the 1992 raid testified at Petitioner's trial. Loren Brown testified that four adults and a child were present during the raid but that he would no longer recognize any of the individuals if he saw them. (Tr. II at 70.) Brown further stated that during the raid he went into one of the bedrooms and, in the closet, found a green, "male-sized" jacket with "two plastic baggies containing crack cocaine." (Tr. II at 70.) Another officer, James Webb, testified that he arrested an individual who identified himself as Larry McGhee. (Tr. II at 75-76.) However, Webb also testified that while Petitioner "look[ed] familiar," he did not recognize him. (Tr. II at 75, 80.) The individual Webb arrested denied selling drugs but told Webb that all the cocaine and marijuana found at the house belonged to him. (Tr. II at 75-76.) Webb estimated that the cocaine found during the 1992 raid was worth about $5,000, which, according to Webb, was not consistent with personal use.  (Tr. II at 76.) The third 1992 raiding officer, Daniel Casey, told the jury that he found a suitcase containing about $1,200 of cocaine on top of a refrigerator in the garage and that there was also a small amount of marijuana in the garage. (Tr. II at 148.) He could not remember if Petitioner was (or was not) at the house during the raid. (Tr. II at 149.)

Petitioner opposed  the admission of this other-act evidence. He also sought to introduce evidence that the search warrant for the 1992 raid was invalid (procured using false information), that the associated criminal charges were dismissed, and that he received a monetary settlement in a subsequent civil suit against the City of Pontiac – including Webb – arising out of the search.

4

(Tr. I at 9-11; see also Dkt. 14-34 at Pg ID 2980.) The trial court did not admit this evidence.

### 3.  Testimony Regarding Petitioner's 1995 Drug Sales

The prosecution also introduced other-act evidence from 1995. In particular, Lamark Northern testified that Petitioner had twice sold him drugs in 1995. (Tr. III at 57-58.) Neither sale took place at 483 Montana, however. (Tr. III at 126.) One sale involved a quarter-ounce of cocaine and the other one-ounce. (Tr. III at 58.)  Northern also said that he participated in a large drug buy (for 10 kilograms of cocaine). According to Northern, another buyer mentioned that the cocaine was going to be divided among several people, including "Crunch." (Tr. III at 60-63.) Northern also testified, over hearsay objections, that one Demar Garvin told him that, in 1995, Garvin had a conversation with Petitioner where "Crunch was upset . . . because [one Nathaniel Lee] was charging [Crunch] more per kilo than what [Lee] paid for them. . . . [Crunch] was upset because at times when he had purchased cocaine for [Lee] . . . he didn't put any extra charge on it." (Tr. III at 64-65.)

Northern admitted that he agreed to testify against Petitioner in grand jury proceedings in hopes of shortening his own sentence for possession with intent to distribute cocaine. (See Tr. III at 52-54, 76, 127.) On cross, Petitioner's counsel brought out the fact that Northern's sentence was reduced from 22 to six years for his testimony. (Tr. II at 100, 127.) Moreover, when the prosecutor asked Northern if he would lie under oath if the Oakland County Prosecutor's Office asked him to do so, he  responded: "Yes, I would." (Tr. III at 131.) Northern was also impeached with arguably inconsistent testimony at federal and state grand jury proceedings. (Tr. III at 149-51.) Before the federal grand jury, Northern omitted Petitioner while identifying others involved in the large drug buy; but when Northern testified before the state grand jury, he implicated Petitioner in the buy. (Tr. III at 149-51.)

## B.  Procedural History

On May 28, 2004, after about six hours of deliberation, including a point at which the jury indicated they could not reach a verdict, the jury convicted Petitioner of possession with intent to distribute cocaine, heroin, and marijuana. The trial court sentenced Petitioner on July 1, 2004. (See Dkt. 14-1, Oakland County Docket Summary.) On or around October 18, 2004, Petitioner, through new counsel, moved for a new trial on the bases of ineffective assistance of counsel and prosecutorial misconduct. (See Dkt. 14-18, Mot. for New Trial.) On December 8, 2004, the trial court denied the motion and noted that Petitioner's trial counsel "did a very good job." (Dkts. 14-15 to 14-17.)

5

On December 10, 2004, Petitioner filed a motion to remand with the Michigan Court of Appeals. (Dkt. 14-28 at ECF Pg ID 2332-73.) Similar to the motion for new trial, the remand motion raised ineffective assistance of trial counsel and prosecutorial misconduct claims. (Dkt. 14-28 at ECF Pg ID 2341.) The Michigan Court of Appeals denied the motion on January 27, 2005 "for failure to persuade the Court of the necessity of a remand at this time." (Dkt. 14-28 at ECF Pg ID 2328.)

On or around February 7, 2005, Petitioner filed his appellate brief, and on November 8, 2005 the Michigan Court of Appeals issued a lengthy published opinion denying Petitioner's appeal. *People v. McGhee*, 709 N.W.2d 595 (Mich. Ct. App. 2005).

On November 26, 2008, the Michigan Supreme Court denied leave to appeal "because [it was] not persuaded that the questions presented should be reviewed."   *People v. McGhee*, 483 Mich. 1073, 769 N.W.2d 598 (Mich. 2008). It does not appear that Petitioner sought certiorari from the United States Supreme Court or state post-conviction relief.

On February 22, 2010, Petitioner filed a habeas corpus petition with this Court. After extensive analysis, the magistrate recommended the Court deny the petition with respect to all claims. McGhee objects to the magistrate judge's findings under Claims II, III, IV, V, and VII.[1] The Court will address the objections, in order raised in the Report.

---

[1] At the end of his Objections, McGhee raises a three-sentence objection regarding the magistrate judge's disposition of his sufficiency-of-the-evidence claim. The Court will dispose of it here. McGhee objects that there is ambiguity as to whether the interior of the car was accessible through the back seat, and therefore whether he had exclusive control over the vehicle. *See* Objection 17 ("The magistrates own facts says the back seat bench was removed and buckets with console added; as such it would appear that the removal of the bench would open up the back of the interior of the vehicle, thus allowing access through the back."); *see also People v. Wolfe*, 489 N.W.2d 748, 752 (Mich. 1992) ("[C]onstructive possession may be demonstrated by direct or circumstantial evidence that . . . the defendant had exclusive control or dominion over property on which narcotics are found."). The Court rejects the objection for the reason stated by magistrate judge: under the applicable standard of review, the factual ambiguity must be resolved in favor of the prosecution. *Thompson v. Bock*, 215 F. App'x 431, 437 (6th Cir. 2007) (stating the legal standard for habeas review of a sufficiency-of the evidence claim). Moreover, common sense suggests that the replacement seats and console would have occupied the entire space.

6

**LEGAL STANDARD**

Section 2254(d) of Title 28, United States Code, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). This court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state -court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.* at 411.

**DISCUSSION**

I.     <u>Claim II: The Michigan Court of Appeals' Conclusion that the Admission of the 1992</u>

7

Raid Evidence was not Constitutional Error was not an Unreasonable Application of, or contrary to, Supreme Court Precedent.

Petitioner objects to three findings under Claim II.

1.    Fourth Amendment

On appeal, McGhee argued that evidence seized in the 1992 raid should not have been admitted against him at trial because it was seized in violation of his Fourth Amendment rights. The Michigan Court of Appeals found that the evidence was improperly admitted, but, when turning to the proper weight to accord the evidentiary error, concluded that the error was "nonconstitutional" because admitting evidence seized after a Fourth Amendment violation is not a constitutional violation in and of itself. *People v. McGhee*, 286 Mich. App. 600, 620-21 (2005); *see also Davis v. United States*, 131 S. Ct. 2419, 2426-27 (2011) ("Exclusion is 'not a personal constitutional right,' nor is it designed to 'redress the injury' occasioned by an unconstitutional search."). Had the error been "constitutional," the prosecution would have been required to prove the error harmless beyond a reasonable doubt. Because the error was nonconstitutional, the burden remained with McGhee to demonstrate that the error more probably than not affected the outcome of his trial. The appellate court found that McGhee did not meet that burden.

In his habeas petition, McGhee objects that the error was in fact constitutional. The magistrate judge reviewed his arguments, and, citing *Davis*, found that the Michigan Court of Appeals conclusion was not an unreasonable application of, or contrary to, Supreme Court precedent.

McGhee now objects that the Michigan Court of Appeals should have deemed the 1992 raid evidence inadmissible under the exclusionary rule because it would have had a

8

deterrent effect to do so. The objection is not responsive to the magistrate judge's finding or the court of appeals' decision. As the magistrate judge noted, the court of appeals "agreed with Petitioner that the trial court erred in admitting the 1992 raid evidence because (1) the evidence was obtained via an unconstitutional search and seizure, (2) the officers who testified at Petitioner's trial about the 1992 raid were those involved in the raid, and (3) Petitioner's trial . . . remained within those 'officer's primary zone of interest' such that the exclusion of evidence would still provide adequate police deterrence." Report 13. McGhee's objections are directed solely to whether the evidence should have been excluded. Because neither the state appellate court, nor the magistrate judge, found differently, the objection is irrelevant. Moreover, the magistrate judge correctly concluded that the state appellate court did not err when it found that admitting the evidence was nonconstitutional error. *See Davis*, 131 S Ct. at 2426-27.

2.   Fifth Amendment: *Miranda* warnings

McGhee also argued to the court of appeals that his statement during the 1992 raid was taken in violation of his Fifth Amendment rights, and should not have been admitted at trial. At trial, Officer Webb testified that during the 1992 raid McGhee waived his Fifth Amendment rights before admitting that the drugs found in the house at the time were his. Tr. II 75-76, ECF No. 14-11. On appeal, McGhee submitted an affidavit stating that he did not receive *Miranda* warnings, and observed in a footnote that the issue could not be resolved without a hearing. App. Br. 8 n.3, ECF No. 14-28 at 93 ("Although the officer testified that defendant waived [his *Miranda*] rights, defendant contends this not true. Since there is no written waiver, a hearing would have to be held on this issue."). The Michigan court of appeals did not address the argument.

9

In his habeas petition, McGhee argues that his statement should have been excluded because of the Fifth Amendment violation, and because the error is constitutional, the appellate court should have required the prosecution to show the error harmless beyond a reasonable doubt.

The magistrate judge reviewed McGhee's Fifth Amendment claim de novo because the Michigan Court of Appeals failed to address it. *See Lyell v. Renico*, 470 F.3d 1177, 1182 (6th Cir. 2006) ("If 'the state court did not assess the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply,' . . . and we "conduct [our] review de novo.") (citations omitted). Since the magistrate judge issued her report, the Supreme Court has held that when a state court opinion addresses some of a petitioner's claims on the merits, but not all of them, it creates a rebuttable presumption that the unaddressed claims were adjudicated on their merits, and that, therefore, AEDPA deference, and not de novo review, applies. *See Johnson v. Williams*, No. 11-465, 568 U.S. ___ (Feb. 20, 2013). The presumption may be rebutted by showing, for example, that the state court's failure to address the claim was the result of inadvertence. *See id.* at 12 ("If a federal claim is rejected as a result of sheer inadvertence, it has not been evaluated based on the intrinsic right and wrong of the matter."). Because *Johnson* issued after the parties' opportunity for objections, neither party has had an opportunity to brief it. Accordingly, the Court will apply de novo review to McGhee's unreviewed claims. In any event, application of de novo review does not change the outcome.

After considering the officers' testimony at trial and McGhee's affidavit, the magistrate judge concluded that McGhee has not established that his Fifth Amendment rights were violated. *See* Report 18-19. In reaching this conclusion, the magistrate judge

noted that Officer Webb's testimony that McGhee waived his rights was corroborated by a police report prepared by another officer just two days after the raid. The magistrate judge concluded, "Given Sergeant Webb's testimony (based on recollections refreshed from his 1992 police report), a corroborating police report, and Petitioner's post hoc contrary affidavit, this Court cannot conclude that Petitioner was not given his *Miranda* warnings." *Id.*

McGhee now objects that the magistrate's finding that McGhee was warned was incorrect. Specifically, McGhee points to the language of the corroborating police report, which states:

> See [Sergeant] J. Webb supp. he prepared, that will include the Resp. statement where he admitted that all the [c]ocaine and marijuana found did belong to him. This writer also witnessed [Sergeant] Webb advising [R]esp. of his rights under the Miranda warning, also the [R]esp. making the statement.

> Police Report, ECF No. 14-26 at Pg ID 2146

Petitioner argues that the order of the sentences in the report — referring first to the statement and then to warnings — suggests that the warnings came *after* McGhee gave his statement.

Reviewing this evidence de novo, the Court agrees with the magistrate judge that Webb's testimony and the corroborating police report establish that McGhee waived his rights in 1992. McGhee's affidavit — coming as it did only after the verdict against him— is not convincing evidence to the contrary. *See Williams v. Allen*, 598 F.3d 778, 788 (11th Cir. 2010) ("It is the petitioner's burden to establish his right to habeas relief and he must prove all facts necessary to show a constitutional violation.") (alteration and quotation marks omitted).

11

3.    Fifth Amendment: coercion

McGhee also briefly suggested to the court of appeals that the statement was taken in violation his Fifth Amendment rights because it was involuntary. The court of appeals did not address the argument. In his habeas petition, McGhee referenced the argument only within the context of his ineffective assistance of trial counsel argument, stating in a single sentence that because the facts to support the claim, "are not of record, a hearing would have to be held." Am. Habeas Petition 33, ECF No. 7. The magistrate judge reviewed th record, relying on McGhee's post-trial affidavit stating that the officers questioned him about the presence of drugs in the home while their guns were drawn and that he answered their questions out of fear for his safety, *see* McGhee Aff., ECF No. 14-36 at 16, and concluded that the evidence did not support a finding that the confession was involuntary and that, therefore, its admission against him at trial was unconstitutional. *See* Report 19-20. McGhee objects that his statements in the affidavit are sufficient to show that the statement was coerced.

The Court will overrule McGhee's objection. "A habeas petitioner bears the burden of proving that a confession was involuntary."*Taylor v. Ludwick*, No. 2:08-CV-11823, 2009 WL 3462542, at *8 (E.D. Mich. Oct. 22, 2009) (citing *Boles v. Foltz*, 816 F.2d 1132, 1136 (6th Cir. 1987)). A confession is involuntary if (1) the police extorted the confession using coercive activity; (2) the coercion was sufficient to overbear the suspect's will; and (3) the suspect's will was, in fact, overcome by the coercive police activity. *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir.1988). To determine whether a confession is involuntary, the reviewing court looks at the totality of the circumstances, including: (1) police coercion; (2) length of interrogation; (3) location of interrogation; (4) continuity of interrogation; (5) the

suspect's maturity; (6) the suspect's education; (7) the suspect's physical condition and mental health; and (8) whether the suspect received his *Miranda* warning. *See Withrow v. Williams*, 507 U.S. 680, 693-94 (1993).

As the magistrate judge held, McGhee has not met his burden to show that the confession in this instance was involuntary. From the evidence before the Court, it is apparent that McGhee was questioned by the police in the home, during the raid, while the police had their weapons drawn. McGhee Aff. Significantly, however, there is no evidence before the Court that, aside from having their weapons drawn, the police acted in a coercive manner. *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988) (finding confession not involuntary, despite officers' drawn weapons, when there was "no evidence that the officers used these weapons in any way to force a 'confession' out of the petitioner."). McGhee does not contend that the officers used their drawn weapons to threaten or coerce him. The interrogation has not been described as continuing for a long period of time. And, as discussed above, the police advised McGhee of his *Miranda* rights. Moreover, as the magistrate judge noted, McGhee was college educated, 22 years old, and apparently in good health at the time of the raid. *See* Report 20. Accordingly, the Court finds that under the totality of the circumstances in the record as it stands, McGhee has not established that his confession was involuntary.

4.     Evidentiary hearing

McGhee states in his habeas petition that an evidentiary hearing is necessary to develop the factual predicate for his Fifth amendment claims. *See* Am. Habeas Petition 17 n.1, 33. Construing the statements as a request for an evidentiary hearing, the magistrate recommends that the Court deny the request because McGhee has not made the showing

13

required under AEDPA. The Court agrees. As applicable here, AEDPA provides that if a petitioner has failed to develop the factual basis of a claim in state court proceedings, he is not entitled to an evidentiary hearing unless he shows that the factual basis for his claims could not have been developed in state court through the exercise of due diligence, and that the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. *See* 28 U.S.C. § 2254(e)(2).

The magistrate judge determined that McGhee failed to establish that the factual basis of his claims could not have been developed in state court through the exercise of due diligence because (1) the court of appeals held that McGhee did not raise his *Miranda* claim with his trial counsel; and (2) McGhee did not seek an evidentiary hearing in state court to develop the factual basis of the Fifth Amendment claims. *See Williams v. Taylor*, 529 U.S. 420, 432 (2000) (diligence "requires in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law"). Specifically, Michigan law requires that requests for hearing be made in a dedicated motion. *See* Mich. Ct. R. 7.211(C)(1); *see also People v. Fisher*, No. 262961, 2007 WL 283799, at *2 n.2 (Mich. Ct. App. Feb. 1, 2007) (finding that "Defendant's alternative request in her appellate brief for [an evidentiary] hearing is not a timely motion for remand as required by MCR 7.211(C)(1)"). McGhee referred to the need for an evidentiary hearing on his *Miranda* claim in a footnote of two state court briefs, but did not file a separate motion for a hearing. McGhee *did* file a motion to remand for an evidentiary hearing to establish that his trial counsel provided ineffective assistance. *See* Mot. to Remand 14, ECF No. 14-28 at 5. The motion was based in part on an argument that counsel was

14

ineffective for failing to raise the Fifth Amendment issues at trial. *See id.* at 28-29.  But, as the magistrate judge noted, McGhee could prove ineffective assistance of counsel without proving that the Fifth Amendment violations actually occurred. *See* Report at 21-22. Accordingly, McGhee's request for a hearing on ineffective assistance is not equivalent to a properly filed request for an evidentiary hearing on his Fifth Amendment claims. To establish the factual basis of his Fifth Amendment claims, McGhee should have submitted a dedicated motion for an evidentiary hearing on those claims.

McGhee argues in his objections  that failure to raise the Fifth Amendment claims at trial was his trial counsel's fault, "and therefore *must* have been addressed in the *Strickland* analysis for [ineffective] counsel." Obj. 6. But the court of appeals found that McGhee had not shown that he told his trial counsel about the alleged *Miranda* violation. *See  McGhee*, 286 Mich. App. at 626. In that case, failure to bring the claim is attributable to McGhee's lack of diligence, not his attorney's. *Id.* ("[C]ounsel cannot be found ineffective for failing to pursue information that his client neglected to tell him.").

Even if, however, McGhee had made reasonable efforts to establish the factual basis of the Fifth Amendment claims in state court, an evidentiary hearing is nonetheless not justified because McGhee has not established by clear and convincing evidence that his 1992 confession was the "but for" cause of his 1998 possession conviction. *See* 28 U.S.C. § 2254(e)(2)(B) (an evidentiary hearing is unwarranted unless petitioner shows that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense"). If the confession had been excluded at trial, McGhee has not shown by clear and convincing evidence that a reasonable factfinder

could not have found McGhee guilty on the basis of the other evidence adduced at trial connecting him to the house and the car in 1998.  Accordingly, McGhee has not made the second showing required under AEDPA to justify an evidentiary hearing. To the extent McGhee seeks an evidentiary hearing with this Court, the Court will deny the request.

II.    Claim V: Petitioner was denied due process of law and an opportunity for a fair trial when the trial court improperly allowed the prosecution to offer bad acts evidence from 1992 as "propensity evidence"

McGhee claims in his petition that the admission of the prior-bad-acts evidence, including (1) the evidence of the 1992 raid and arrest; (2) Lamark Northern's testimony regarding McGhee's1995 drug sales and discussions regarding drug sales, and (3) evidence of the gun found in McGhee's car when arrested, deprived him of a fundamentally fair trial, in violation of his due process rights.

The magistrate judge, reviewing the claims, first recognized that there is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) ("There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." ). Second, the magistrate judge concluded that the admission of the other-acts evidence was not so egregious that it falls within the "very narrow category of egregious evidentiary errors that deprive a defendant of a fundamentally fair trial." Report 27.

McGhee objects that admission of the evidence *was* sufficiently egregious to fall within that very narrow category of cases. He does not cite any legal authority to support his position. *See* Objections 7-8. Rather, he raises arguments considered and rejected by

16

the magistrate judge. Specifically, he argues that the evidence was not appropriately admitted under state law; that absent the other acts, there was "no hard evidence against the petitioner"; and that the mitigating instructions to the jury were insufficient to offset the prejudicial effect of the evidence. *See* Objections 7.

The Court will overrule McGhee's objection. As the magistrate judge noted, the category of evidentiary errors that is sufficiently egregious to deprive a defendant of a fundamentally fair trial is "very narrow." Report 27; *see also Hudson v. Lafler*, 421 F. App'x 619, 628 (6th Cir. 2011) ("Erroneously admitting evidence under state evidence rules amounts to a due process violation in a federal habeas proceeding only in extraordinary cases."). "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " *Seymour*, 224 F.3d at 552 (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). It is possible to draw permissible inferences regarding McGhee's knowledge of the nature of the substances, possession of the drugs and intent to distribute the drugs from the evidence related to the 1992 raid and Lamarck Northern's testimony. *See* Report 26-27 (citing *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005) ("Admission of evidence violates due process only if there are *no* permissible inferences the jury may draw from it.") (citations and other alterations omitted)). Even if the prejudice caused by admission of the evidence outweighed its probative value — particularly evidence of the gun found in McGhee's car at the time of his arrest — the prejudice was not substantial enough to offend due process. For instance, as the Court noted above, other evidence supported McGhee's guilt, such as evidence that he owned the house and that it was not being rented at the time, the notes found in the house

17

suggesting McGhee was frequenting the house, and evidence that the car in which drugs were found was registered to McGhee, and that the former renter could not access the car. *See McGhee*, 268 Mich. App. at 623 ("Circumstantial evidence that a defendant had the exclusive control or dominion over property on which contraband narcotics are found is sufficient to establish that the defendant constructively possessed the drug.") (internal citations and alterations omitted); *see also Hudson*, 421 F. App'x at 629 ("[W]hen federal courts decide whether a state evidentiary error amounts to a due process violation, they consider the strength of the other evidence of guilt."). And moreover, the trial court twice instructed the jury not to consider the prior-bad-acts evidence for propensity purposes. *See Bey*, 500 F.3d at 522 (finding no due process violation, in part because "the trial court carefully instructed the jury that it was to consider that evidence only for the limited purpose of determining identity"). Accordingly, the Court finds that the magistrate judge's analysis was proper and the state court's admission of the prior-bad-acts evidence did not violate due process. The Court will overrule McGhee's objection on this issue.

III.   Claim VII: Petitioner was denied due process by a plethora of evidentiary errors committed by the trial court

In Claim VII of his habeas petition, McGhee argues that several purported evidentiary errors committed by the trial court violated due process. The magistrate judge recommends the Court reject the claim.  McGhee objects to the magistrate judge's findings with respect to the following purported trial-court errors: (1) preventing McGhee from submitting evidence that the 1992 charges brought against him after the raid were dismissed, that the police acted illegally in the raid, and that McGhee was successful in a civil lawsuit against the officers in question; and (2) limiting McGhee's ability to cross-

18

examine Lamarck Northern regarding his agreement with the prosecution for leniency in exchange for his testimony. McGhee also argues that these errors, along with the incidences of prosecutorial misconduct that he alleges occurred at trial, should be considered cumulatively to determine whether a due process violation occurred.

Taking the last issue first, as the magistrate judge recognized, the Sixth Circuit holds that "cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue." *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)). In his objections, McGhee argues that the Sixth Circuit's holding is wrong on the merits. Whether or not it is, it is binding on this Court. McGhee's arguments would be better raised on appeal.

With respect to McGhee's first and second arguments listed above, a trial court's ruling regarding the admissibility of evidence cannot support habeas relief unless the error is so egregious that it had the effect of denying the petitioner a fundamentally fair trial. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).

At trial, Officer Webb, Officer Brown, and Officer Casey testified about McGhee's presence in the home during the 1992 raid, and his confession that the drugs found belonged to him. In order to impeach the officers' testimony, McGhee sought to introduce evidence that the charges brought against him after the 1992 raid were dismissed and that McGhee was successful in a civil lawsuit against the officers in question. In particular, McGhee sought to demonstrate that the officers testifying held a grudge against him.

The court of appeals found that the trial court excluded McGhee's evidence in error, but that any error was harmless, and not a due process violation, because the prosecution otherwise submitted sufficient evidence to prove that McGhee had constructive possession

19

of the drugs in the house, and to support the inference that he knew the drugs were there. *See McGhee*, 268 Mich. App. at 638. The magistrate judge, reviewing this conclusion, agreed that the trial court's decision to preclude admission of the evidence, although likely in error, was not so egregious to deny McGhee a fair trial. Report 31 (citing *Tolliver v. Sheets*, 594 F.3d 900, 924 (6th Cir. 2010) ("[when] a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had a substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless. And, the petitioner must win."). Specifically, the magistrate judge concluded that (1) questions regarding whether the officers were testifying with a retaliatory motive because of McGhee's civil suit would not have significantly undermined their testimony because each officer testified that he did not recognize McGhee, casting doubt on McGhee's "theory of long-held ill will," Report 8; (2) two of the officers refreshed their memory with notes from the 1992 raid, prepared before McGhee's successful civil suit; (3) evidence regarding the civil suit would have *supported* the officers' testimony to the extent that it proved that McGhee was at the scene; and (4) the 1992 raid evidence was only part of the case against McGhee, not the but-for cause of his conviction.

In his objections, McGhee argues (1) that the officers's failure to recognize McGhee from the 1992 raid when they saw him at trial in 1998 has no bearing on whether they bore ill will against him for prevailing in his civil suit; and (2) that McGhee needed the ability to cross-examine the officers regarding the suit to impeach their testimony about the 1992 raid. The Court finds these objections insufficient to demonstrate that the evidentiary errors merit habeas relief. As the court of appeals held, evidence regarding McGhee's civil suit was relevant to support his theory of defense, and to impeach the officers' testimony, and

20

therefore was erroneously excluded. But for the reasons stated by the magistrate judge (summarized above), notwithstanding McGhee's objections, the Court is not in doubt about whether excluding the evidence "had a substantial and injurious effect or influence in determining the jury's verdict." *Tolliver*, 594 F.3d at 924.

As stated above, McGhee also objects that the trial court erred when it prevented him from cross examining Northern about whether Northern would have been charged with conspiracy had he refused to testify against McGhee. A conspiracy conviction carries a potential life sentence. McGhee argues in his petition that introducing into evidence that Northern faced life in prison would have made clear to the jury the extent of Northern's motivation to testify against McGhee. McGhee restates this argument in his objections. The magistrate judge concluded, and the Court agrees, that precluding the evidence did not render the trial fundamentally unfair because the jury was presented with multiple other reasons to question Northern's credibility. Specifically,

> On direct, Northern admitted to being convicted of both possession with intent to deliver cocaine and escape. He further admitted to an agreement with the Oakland County prosecutor's office in exchange for grand jury testimony. On cross, Petitioner's counsel brought out the fact that this led to a sentence reduction from 22 years to six. Northern was also impeached with seemingly inconsistent testimony at federal and state grand jury proceedings regarding Petitioner's involvement. Moreover, he admitted to the jury that he would lie under oath if law-enforcement authorities asked him to.

Report 34. Given the other evidence undermining Northern's credibility, the Court finds that precluding admission of evidence of the conspiracy charge did not have a substantial or injurious effect on the jury's verdict. *See Tolliver*, 594 F.3d at 924.

IV.   <u>Claim IV: Petitioner was denied due process of law due to prosecutorial misconduct</u>

McGhee's habeas petition asserts several instances of alleged prosecutorial

21

misconduct. The magistrate judge reviewed each allegation and found that no due process violation occurred. In his objections, McGhee renews his argument that the prosecutor engaged in misconduct by (1) improperly vouching for prosecution witness Lamark Northern through questions on direct examination that suggested that if Northern was not testifying truthfully at trial, he would lose his plea deal; and (2) submitting into evidence Northern's resentencing agreement, which indicated that Northern had agreed to take a polygraph examination.

The Sixth Circuit applies a two-step inquiry to determine whether prosecutorial misconduct merits habeas relief. A court asks: (1) whether the prosecutor's conduct was improper, and, if so, (2) whether the misconduct was flagrant. *See Wilson v. Bell*, 368 F. App'x 627, 633 (6th Cir. 2010). The magistrate judge concluded that even conceding that the above incidents constituted misconduct, they do not warrant habeas relief because the remarks were not "flagrant" enough to constitute a due process violation. The Court agrees.

McGhee's vouching argument stems from the following exchange between the prosecutor and Northern on redirect:

> [Prosecutor]: Would you lie for us under oath?
> [Northern]:   (no verbal response)
> Q:            Lamark, would you do it?
> A:            If you asked me to.
> Q:            Okay. Did we ask you to do that?
> A:            No.
> Q:            Isn't it in fact part of your agreement that you have to tell the truth?
> A:            Yes.
> Q:            And that if we find out at any time that you've lied, that the agreement was null and void?
> A:            That's my understanding.

Tr. III at 131, ECF No. 14-12 at 131.

A prosecutor commits improper vouching by making "comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999). McGhee argues that the use of the words "at any time" in the prosecutor's final question above vouched for Northern because it suggested to the jury that the prosecutor could discern whether or not Northern was not testifying truthfully at that moment, and that if he was not, then his plea agreement would be rescinded. This error was exacerbated, McGhee argues, when the prosecutor submitted to the jury Northern's resentencing agreement indicating that he had taken a polygraph test because it implied that McGhee must have taken, and passed, the polygraph test or he would not be testifying.

The court will overrule the objections. Assuming that the prosecutor's question and the reference to a polygraph test were improper, they were nonetheless not so flagrant that reversal would be warranted. *Bates v. Bell*, 402 F.3d 635, 647 (6th Cir. 2005). "Flagrancy is determined by an examination of four factors: (1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant." *Id.* As to the first factor, it is not certain that the prosecutor's question and the polygraph reference would tend to mislead the jury or prejudice McGhee. Neither remark explicitly vouched for Northern. Each *could have* caused a mistaken inference in the jury's minds if understood a certain way, but it is not necessarily likely that they did. As to the second and third factors, both remarks were isolated and were likely inadvertent. The prosecutor's line of questions on re-direct

23

appears to have been an attempt to course correct after Lamark's surprising admission that he would lie if asked to. With respect to the polygraph exam, McGhee does not point to any reference made to it at trial, other than in the resentencing agreement. *See* Am. Habeas Petition 41-45.  It seems reasonable to conclude that the prosecutor simply forgot to redact the information before providing the resentencing agreement to the jury. As to the fourth factor, the evidence against McGhee, aside from Northern's testimony, was not "strong," but it was not nonexistent. Specifically, as mentioned above, the prosecution submitted substantial evidence showing that McGhee exercised control over the house and the car at the time the drugs were found; evidence from the 1992 raid going toward McGhee's knowledge of the nature of the substances and intent to distribute; and evidence that McGhee fled the state when the warrant issued, suggesting guilt. Accordingly, Northern's testimony was far from the only evidence of guilt.

Given the foregoing, the Court concludes that the prosecutor's question and polygraph reference were not flagrant misconduct, and that, therefore, the state court's rejection of McGhee's due process claim was not unreasonable.

V.    Claim III: Petitioner was denied effective assistance of counsel in several key, prejudicial, and outcome determinative ways

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.* at 687. Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. To satisfy

24

the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court's review of counsel's performance must be "highly deferential." *Id.* at 689. When, as here, the state court addressed the petitioner's ineffective-assistance claim, a second layer of deference applies: the petitioner must establish, not only that counsel was constitutionally ineffective, but that the state court's application of *Strickland* was unreasonable under 2254(d). *Harrington*, 131 S.Ct. at 788 ("The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so . . . .").

In his habeas petition, McGhee argued that his trial counsel was ineffective for (1) failing to realize that McGhee had filed his civil suit regarding the 1992 raid against Officer Webb; (2) failing to discover that "Ezell Moore" was the name on the warrant executed in 1992; (3) failing to challenge evidence that a shotgun was found in the 1992 raid and empty firearm boxes were found in the 1998 raid, and the admission of the gun in McGhee's car when he was arrested in 2001; (4) implying in closing arguments that the gun found in 2001 was stolen and that McGhee was homicidal; (5) failing to assert that McGhee's 1992 confession was unwarned and coerced;(6) failing to file an interlocutory appeal regarding the trial court's decision to admit the 1992 raid evidence; (7) failing to object to instances of prosecutorial misconduct set forth in the petition; (8) failing to object that the information was void under state law; and (9) that trial counsel's errors, considered cumulatively, were prejudicial under *Strickland*. The magistrate judge rejected all the claims.

In his objections, McGhee objects to the magistrate judge's finding as to the claim

25

of cumulative prejudice and the following three of the above arguments: (1) trial counsel's failure to challenge evidence that a gun was found in McGhee's car when he was arrested in 2001; (2) trial counsel's statements in closing arguments implying that McGhee was homicidal; (3) trial counsel's failure to raise prosecutorial misconduct at trial.

With respect to trial counsel's failure to object to evidence of the gun found in McGhee's car in 2001, the court of appeals held that evidence of the gun, along with other evidence related to McGhee's arrest in Georgia, was relevant to show McGhee's "intent to avoid capture, and probative to negate innocent intent," and therefore any objection by counsel would have been futile. *McGhee*, 268 Mich. App. at 613.

The magistrate judge disagreed regarding the gun, finding that, "[a]lthough Petitioner's arrest in Georgia, failure to open the door to the FBI, and presentation of false identification, were all relevant to show that Petitioner harbored guilt about the narcotics found in 1998, the admission of the gun in Petitioner's car probably ran the risk of the jury drawing a negative character inference without substantial probative value." Report 58. Nonetheless, the magistrate judge found that McGhee did not demonstrate the prejudice required under *Strickland* because "the jury's focus at trial was on possession and distribution of narcotics, and, more specifically, whether Petitioner had knowledge of the narcotics found at 483 Montana in 1998." *Id.*

McGhee objects that the magistrate judge effectively, and mistakenly, holds that propensity evidence is not prejudicial unless it shows a propensity to commit the charged crime in particular. The Court finds this construction of the magistrate judge's finding inaccurate. The magistrate judge agreed with McGhee that admission of the gun was improper propensity evidence. But she held that McGhee had not demonstrated the

26

prejudice required under *Strickland* because, even if the evidence was prejudicial, it, at least, did not relate directly to the crimes with which McGhee was charged. The Court agrees. Evidence of the gun, although prejudicial, is insufficient to undermine confidence in the jury's conviction on the drug charges. *Strickland*, 466 U.S. at 694.

McGhee's second ineffective-assistance objection arises from a statement by trial counsel in closing arguments. In closing arguments trial counsel attempted to offer other reasons that McGhee might have fled to Georgia, aside from consciousness of guilt. *See* Tr. III at 308-09. As the magistrate judge noted, trial counsel referenced "testimony from Northern suggesting that someone with information about drug trafficking could be in danger from those involved in the trafficking." Report 59 (citing Tr. III at 129-30, 317). In the remarks at issue, trial counsel stated to the jury:

> When he says, "Hey, these innocent people are people who just have information," it may scare you enough to get out of here. Okay? He's found with a gun. You know what guns do? You either go out to kill people or you protect yourself with it.
>
> And if you're running out of fear, I imagine you may want to possess a weapon. You may just . . . want to. *You may want to go all the way and say, "If I'm going to meet my demise, I may take someone with me."* You may say that. And the testimony — again, ladies and gentlemen, Mr. McGhee has asked me to specifically — I'll retract that.

Tr. III at 317-18 (emphasis added).

The magistrate judge concluded that the italicized statement "is questionable." Report at 59. But she nonetheless recommends the Court deny McGhee's claim because (1) counsel retracted it; and (2) the court of appeals' conclusion that the statements were not prejudicial was not unreasonable. Specifically, the court of appeals concluded that by making the above statements, counsel "did not imply that defendant was potentially

27

homicidal; rather, he implied that defendant felt the need to protect himself from danger"
because "he possessed knowledge of his tenant's drug dealing and was afraid." *McGhee*,
268 Mich. App. at 628.

In his objections, McGhee argues that trial counsel's retraction did not cure the error.
The Court will overrule the objection. Under the "double deference" applicable to review
of the court of appeals' decision on the ineffective-assistance claim, the Court agrees with
the magistrate judge that the court of appeals' construction of the statement, and counsel's
intent in making it, was not unreasonable.

Third, McGhee argues in his objections that trial counsel was ineffective for failing
to object to the two incidents of alleged prosecutorial vouching addressed above. The
magistrate judge found that McGhee failed to establish that he was prejudiced by the
vouching for the same reasons that the magistrate judge found that the remarks were not
flagrant. The Court agrees. For the reasons set forth addressing McGhee's due-process
objections to the prosecutor's "any time" statement on redirect of Northern and the
polygraph reference in the resentencing agreement, the Court finds that McGhee has failed
to establish that but for trial counsel's failure to object to these incidents, the outcome of
trial would have been different. *Strickland*, 466 U.S. at 694.

Finally, the Court will overrule McGhee's objections regarding the cumulative effect
of trial counsel's errors. The magistrate judge reviewed the results of her analysis of
McGhee's ineffective assistance claims and concluded that,

> counsel arguably erred by (1) failing to argue that Petitioner had filed a
> lawsuit against Webb when seeking to admit evidence of Petitioner's civil
> suit; (2) failing to challenge the admission of the firearm evidence from 1992,
> 1998, and 2001; and (3) failing to challenge two instances where the
> prosecutor arguably vouched for Northern. The combined impact of the

28

counsel's errors may have increased the likelihood that the jury would conclude (1) that Petitioner was a "bad" person generally and a drug dealer specifically, and (2) that Petitioner knew about the drugs found in 1998 because he had possessed or distributed drugs in 1992 or 1995.

The magistrate judge then reviewed the effect of each error, and concluded that, even assessed cumulatively, "the combined prejudice does not demonstrate that but for counsel's errors, the outcome of Petitioner's trial would have been different." Report 69.

McGhee objects that trial counsel's (1) failure to move for a *Walker* hearing regarding McGhee's Fifth Amendment claims; (2) failure to obtain permission to raise evidence of his civil suit during cross-examination; (3) failure to object to the admission of the firearm evidence; and (4) failure to object to the above-described incidents of prosecutorial vouching were "clearly prejudicial," and sufficient to sustain a finding of ineffective assistance of counsel under *Strickland.*

The Court will overrule the objections. With respect to trial counsel's failure to move for a *Walker* hearing, the court of appeals found that McGhee did not inform his trial counsel that he was not given *Miranda* warnings when he confessed during the raid in 1992. And McGhee's petition does not state that he raised the coercion issue with his attorney. *See* Am. Habeas Petition, 32-33. Trial counsel is not ineffective for failing to pursue a claim that was not brought to his attention. Moreover, as discussed above, based on the evidence of record at this time, including McGhee's affidavit, it appears that McGhee did receive his *Miranda* warnings, and that his confession was not coerced. With respect to trial counsel's failure to obtain permission to raise evidence of his civil suit on cross-examination — McGhee's trial counsel *did* move for permission to impeach the testifying officers with evidence of McGhee's successful civil suit. But he failed to point out to the

29

district court that McGhee's civil suit was brought against Officer Webb in particular, which might have persuaded the trial court that McGhee had a basis for arguing that Webb was testifying with a retaliatory motive. Nonetheless, the Court agrees with the magistrate judge that the prejudicial effect of this error was not great because "this impeachment would not have been particularly strong, would probably have opened the door to prior consistent statements [from Officer Webb's notes at the time of the 1992 raid], and would have corroborated Webb's testimony that Petitioner was present at a location where the drugs were found." Report 68. Finally, the Court finds that failure to object to the prosecutorial vouching and the firearm evidence were minimally prejudicial for the reasons already discussed. Taken together, counsel's errors do not go to the heart of the prosecution's against McGhee, and are insufficient to undermine the weight of the other evidence against McGhee. Accordingly, the Court finds that, even cumulatively, trial counsel's errors are not sufficient to undermine confidence in the outcome of the case. *Strickland*, 466 U.S. at 694.

## CONCLUSION

For the reasons stated, the Court will overrule McGhee's objections, adopt the Report, and deny the petition for writ of habeas corpus.

## CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold

30

is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that none of the claims in the habeas petition warrant relief. Therefore, the Court denies a certificate of appealability.

## ORDER

**WHEREFORE** it is hereby **ORDERED** that the Report & Recommendation (docket no. 16) is **ADOPTED**.

**IT IS FURTHER ORDERED** that McGhee's objections (docket no. 17) are **OVERRULED.**

**IT IS FURTHER ORDERED** that the petition for a writ of habeas corpus and a certificate of appealability are **DENIED.**

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge


Dated: March 7, 2013

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 7, 2013, by electronic and/or ordinary mail.

Carol Cohron
Case Manager